**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**COLUMBIA DIVISION**

| | | |
|---|---|---|
| **SHERRY MONCE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:16-cv-00007** |
| | ) | **Chief Judge Crenshaw** |
| **MARSHALL COUNTY BOARD OF** | ) | |
| **EDUCATION and JACKIE** | ) | |
| **ABERNATHY, Director of Marshall** | ) | |
| **County Schools,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Pending before the Court is Defendants' "Motion for Partial Summary Judgment as to Marshall County Board of Education and Summary Judgment as to Jackie Abernathy" (Doc. No. 38), to which Sherry Monce has responded in opposition (Doc. No. 45), and Defendants have replied (Doc. No. 51). For the reasons set forth below, the Motion will be granted in part and denied in part.

### I. Factual Background

The parties have filed their own statements of undisputed facts.[1] Collectively, those statements, and the record before the Court, suggest the following to be the relevant facts:

Monce has been a teacher for more than two decades. For the last sixteen years, she has taught at Forrest School in Marshall County, Tennessee. Abernathy served as the Marshall County Director of Schools during the period relevant to this lawsuit.

---

[1] The Court limits its citations to those facts that are disputed. Defendants' Statement of Facts and Monce's responses thereto (Doc. No. 46) are cited as "DSOF___"; Monce's Statement of Facts and Defendants' responses thereto (Doc. No. 49) are cited as "PSOF ___". Citations to the exhibits from Monce's Deposition (Doc. No. 38-1) are identified as "Pf. Exh. ___".

In December 2012, Monce was diagnosed with breast cancer, and underwent a double mastectomy in March of 2013. That summer, she underwent chemotherapy and radiation treatment. In October 2013, Monce had a hysterectomy.[2]

Defendants claim that Monce was not in her designated area for Fun Day activities on May 21, 2014, and was on her computer instead of supervising students. That same evening, Monce climbed on top of the press box at the Middle Tennessee Christian School to watch a Forrest School baseball game. Monce claims that she had not been instructed where she needed to be for the "Fun Day" activities and that, once she arrived at the school, she supervised students, and assisted one student with an online computer program. Monce concedes that she climbed on top of the press box while off-duty, but claims she did so because she was "suffering from a migraine," and decided to watch her son play baseball from that vantage point. (DSOF ¶ 7). Regardless, Monce received an "Oral Reprimand" (memorialized in writing on May 23, 2014) that stated both incidents were unprofessional and reflected poorly on the school. (Pf. Exh. 8).

On August 22, 2014, Monce underwent breast reconstruction surgery. After surgery, she was out of school for the next four weeks.

In late November 2014, Monce was accidentally shot in the head by her husband while the two were bird hunting. On February 4, 2015 she asked the school trainer to use an X-acto knife Monce had in her possession to cut into her scalp to see if it was infected. When the trainer refused, a student, who was sitting nearby, volunteered. Monce allowed the student to make the incision.

As a result, Monce received a "Letter of Reprimand – Unprofessional Conduct" dated

---

[2]  The parties disagree as to Defendants' knowledge of Monce's medical conditions. Defendants admit that Marshall County School administrators knew that Monce had been treated for cancer, but they generally deny that they were aware of the full scope of her treatment, or the medications that she received for that treatment. (PSOF ¶ 1).

February 20, 2015 from John McClaran, the school principal, that recounted the X-acto knife incident and expressed concerns that Monce had behaved unprofessionally in the past. This included leaving the school without permission for two hours on April 2, 2014, climbing on top of the press box on May 21, 2014, and allowing her 14-year old son to drive her home after the ball game, even though she was "heavily medicated." (Pf. Exh. 11).[3] The letter was intended "to underscore the importance of complying with Marshall County School's policies, rules and regulations," and "to serve as a written reprimand." (Id.). Additionally, Monce was suspended without pay so that the school could investigate her "unprofessional conduct." (Id.).

On February 24, 2015, Monce met with Principal McClaran and Robby Reasonover, another administrator. This meeting resulted in a Corrective Plan for Plaintiff to follow. Among other things, the Plan expected Monce to (1) be present to instruct and supervise students; (2) not be on her computer, except at lunch or for planning purposes; (3) notify the office when she left the premises and (4) dress and act professionally.

Defendants claim that Plaintiff left her class unsupervised on April 21, 2015, during which time a student videotaped another student climbing on top of a basketball goal. Monce claims that, at the time the incident occurred, she was in the equipment room getting supplies for class. (DSOF ¶ 16). Regardless, Monce received another reprimand because she had not followed the Corrective Action Plan, and was not present and supervising students during an assigned class.

---

[3] Both this Letter of Reprimand and the Oral Reprimand of May 23, 2014 indicate that the "Forrest administration" was made aware that Monce was "heavily medicated" at the baseball game and that she allowed her fourteen year old son to drive her home. The Oral Reprimand also states that Monce was observed "acting erratically outside the outfield fence" and "laying in the grass" the day after the baseball game. (Ex. 8). Apart from agreeing that Monce was on top of the press box, and a dispute about whether Monce was "heavily medicated," these "facts" are not included in either parties' statement and are not relied upon by the Court in reaching its conclusion.

During an April 22, 2015 meeting regarding the climbing incident, Abernathy claims that she smelled alcohol on Monce and suggested she take a drug test. Monce claims she does not drink during the day, Abernathy never made any such allegations, and the accusation is not documented in any school record. (Id. ¶¶ 19, 20). Monce also claims Abernathy demanded that she take a drug test, or face a 5-day suspension. (Id. ¶ 18).

The Marshall County Board of Education has a Policy intended to maintain a drug-free workplace. It prohibits the possession or use of alcohol or narcotic drugs on any school premises of vehicle, or at school sponsored activities or functions. (Pf. Exh. 14). The Board also has a policy that requires "trained supervisors" to observe and document "reasonable suspicion" that an employee is using drugs, is in an "[a]pparent physical state of impairment of motor functions," or exhibits "[m]arked changes in personal behavior not attributed to other factors." (Id.). Under the policy, if any of those things are observed, an "employee may be required to submit to substance screening[.]" (Id.).

Monce submitted to a drug test after consultation with a union representative. The result showed the presence of alcohol metabolites. Monce does not deny that those were the results, but claims that the test used – Ethyl Glucuronide (EtG) testing, commonly known as the "80 hour" test, detects EtG metabolites in urine up to 3 to 4 days after alcohol consumption, and therefore "has no value in ascertaining whether an individual is actually under the influence of alcohol at the time of testing or whether an employee used alcohol while on duty." (DSOF ¶ 26). Furthermore, the drug tests also showed the presence of prescription drugs that had been prescribed to Monce.

After receipt of the results, Abernathy notified Monce, by letter dated April 30, 2015, that she was suspended without pay for the remainder of the school year "due to violation of school

board policies." (Pf. Exh. 15). The letter also attached Monce's lab report and stated that before returning for the next school year, "you must have a 10-panel clean drug screen conducted no more than five days prior to the start of school, and submit a note from your physician stating you are not impaired." (Id.).

On May 29, 2015, a lawyer for the Tennessee Education Association ("TEA") sent a letter to Abernathy on behalf of Monce stating that the suspension letter did not comply with the requirements of Tennessee's Tenure Teachers Act ("TTA"), Tenn. Code Ann. § 49-5-501, *et seq.*, because it did not (1) specify one of the enumerated bases for suspension under the Act; (2) set forth the factual allegations supporting the suspension, or (3) provide Monce with notice of her legal rights. (Pf. Exh. 19). The letter requested proper due process notice in accordance with the Act, or, alternatively, that Monce be provided a hearing before an impartial hearing officer. (Id.) Abernathy did not respond to that letter. That same lawyer sent a letter dated August 21, 2015, stating his "understanding that if Ms. Monce passes her latest drug test, then 'all is forgiven,'" to which there was no response from Abernathy. (Pf. Exh. 20). Monce disputes that any such agreement was reached. In fact, the failure to reach an agreement resulted in this lawsuit.

Abernathy added additional conditions in August 2015, specially that Monce receive a note from her physician stating that she could "supervise her kids on her medicine." (PSOF ¶ 14). Monce also claims Abernathy required that Monce bring all of her prescriptions medications to the school for inspection, a charge which Defendants dispute. (Id. ¶¶ 9-13). When Monce brought her medications to the school, McClaran took photographs of the bottles and shared them with

Abernathy.[4] (Id. ¶ 9).

Based upon the foregoing events, Monce filed suit in this Court alleging federal statutory and constitutional claims, and a state law claim. In the controlling First Amended Complaint, Monce alleges that her suspension violated the Americans With Disabilities Act ("ADA"), 42 U.S.C. §12101, *et seq.* She also alleges that the circumstances surrounding her two compelled drug tests, as well as the Defendants' requirement that she disclose all of her medications, violated her Fourth Amendment right to be free from unreasonable searches. Monce further contends that, by summarily suspending her for the balance of the 2014-15 school year, Defendants deprived her of her property interest in continued employment without due process of law in violation of the Fourteenth Amendment. Finally, Monce alleges that Abernathy's imposition of a suspension for the remainder of the school year violated the Tenured Teacher Act, Tenn. Code Ann. § 49-5-512(d). Defendants move for summary judgment on all claims, except for the Fourth Amendment compelled drug test claim.

## II. Standard of Review

The standards governing summary judgment have been restated on countless occasions and, from the filings that have been submitted, are obviously understood by the parties. It suffices to note: (1) summary judgment is only appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law, Fed. R. Civ. P. 56(a); (2) the facts and inferences must be construed in favor of the nonmoving party, Van Gorder v. Grand Trunk W. R.R., Inc., 509 F.3d 265, 268 (6th Cir. 2007); (3) the Court does not weigh the evidence, or judge the

---

[4] At the time of her suspension, Monce was taking hydrocodone for both ankle pain (that preceded her cancer diagnosis), and for hip pain that resulted from taking Tamoxifen during her cancer treatment, along with other prescription medications.

credibility of witnesses when ruling on the motion, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986); and (4) the mere existence of a scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment, <u>Rodgers v. Banks</u>, 344 F.3d 587, 595 (6th Cir. 2003).

## III. Application of Law

### A. <u>ADA Claim</u>

"Congress enacted the ADA 'with the noble purpose of providing a clear and comprehensive mandate for the elimination of discrimination against individuals with disabilities." <u>Melange v. City of Ctr. Line</u>, 482 F. App'x 81, 84 (6th Cir. 2012). It prohibits covered employers from discriminating against a "qualified individual on the basis of disability with regard to hiring, advancement, training, termination, and "other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

ADA claims can be proved using either direct or indirect evidence. <u>Ferrari v. Ford Motor Co.</u>, 826 F.3d 885, 891 (6th Cir. 2016); <u>Hedrick v. W. Reserve Care Sys.</u>, 355 F.3d 444, 452 (6th Cir. 2004). Monce attempts to establish her ADA claims utilizing both methods of proof.

### 1. Direct Evidence

Direct evidence is evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the challenged employment decision. <u>Young v. UPS</u>, 135 S.Ct. 1338, 1345 (2015); <u>Wexler v. White's Fine Furniture, Inc.</u>, 317 F.3d 564, 570 (6th Cir. 2003). If the plaintiff presents credible direct evidence of discrimination, then the defendant's burden is a burden of persuasion– not merely production – to show that the defendant would have made the same decision even if not motivated by discrimination. <u>Johnson v. Univ. of Cincinnati</u>, 215 F.3d 561, 572-73 (6th Cir. 2000); <u>Jacklyn v. Shering-Plough Healthcare Prods. Sales Corp.</u>, 176 F.3d 921, 926 (6th Cir. 1999).

In support of her direct evidence case, Monce writes:

> The record contains direct evidence of discrimination. The Defendants knew that Monce had undergone prolonged treatments for cancer. The Defendants had before them in April 2015, when they suspended Monce, the results of Monce's first drug test. The Defendants have tried to justify that test on an unrecorded recollection by Director Abernathy over a year later that she smelled alcohol on Monce. But the test was a ten-panel drug screen. The results showed that Monce was taking valid prescription drugs. With those results in hand, the Defendants insisted not only that Monce would have to undergo another drug test in August in order to return to work, but that she also would have to provide a physician's note or letter attesting that she was able to work. This evidence, and the reasonable inferences to be drawn from it, is sufficient to constitute direct evidence of discrimination.

(Doc. No. at 15). Contrary to Monce's assertion, this is not direct evidence of disability discrimination.

"Direct evidence proves the existence of discrimination 'without requiring any inferences.'" Golden v. Mirabile Inv. Corp., No. 17-5346, 2018 WL 1168253, at *4 (6th Cir. Mar. 6, 2018) (citing Rowan v. Lockheed Martin Energy Sys., Inc., 360 F.3d 544, 548 (6th Cir. 2004). In other words, "'when direct evidence is provided, no inferences are needed in order to conclude that . . . discrimination is afoot." Bradley v. Rhema-Nw. Operating LLC, No. 16-2493, 2017 WL 4804419, at *2 (6th Cir. Oct. 3, 2017) (quoting Tennial v. United Parcel Serv., Inc., 840 F.3d 292, 302 (6th Cir. 2016)).

Prototypical is the university president's alleged statement in Johnson, 215 F.3d at 577 that "[w]e already have two black vice presidents. I can't bring in a black provost." See also, DiCarlo v. Potter, 358 F.3d 408 (6th Cir. 2004) (supervisor's alleged statements that Italian–American probationary employee was "a dirty wop" and that there were too many "dirty wops" working at facility was direct evidence of national origin discrimination). In contrast, a manager's expressed "concern about the potentially detrimental effect on business of having an African-American co-manager" was not direct evidence of race discrimination. Johnson v. Kroger Co., 319 F.3d 858, 865

(6th Cir. 2003); see also Lee v. Cleveland Clinic Found., 676 F. App'x 488, 493 (6th Cir. 2017) (manager questioning subordinate as to when she would retire was not direct evidence of age discrimination).

Had Abernathy told Monce that she was being suspended because she had undergone cancer treatment, or was on medication because of that treatment, this would be direct evidence. That Monce underwent a drug screen and was thereafter suspended does not directly establish that the suspension was because she had cancer, or was being treated for that condition.

### 2. Indirect Evidence

To make out a prima facie case of ADA discrimination, a plaintiff must show that "1) she is an individual with a disability; 2) she is otherwise qualified to perform the job requirements, with or without reasonable accommodation; and 3) she suffered an adverse employment action because of her disability." Barnum v. Ohio State Univ. Med. Ctr., 642 F. App'x 525, 532 (6th Cir.) (citing, Sullivan v. River Valley Sch. Dist., 197 F.3d 804, 810 (6th Cir.1999). "Once a plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason' for its actions." Talley v. Family Dollar Stores of Ohio, Inc., 542 F.3d 1099, 1105 (6th Cir. 2008) (quoting Gribcheck v. Runyon, 245 F.3d 547, 550 (6th Cir. 2001)). "If the defendant can satisfy its burden, the plaintiff must show by a preponderance of the evidence that the proffered explanation is a pretext for discrimination." Id.

Defendants argue Monce cannot establish a prima facie case because she cannot establish that she was disabled. They also argue that Monce cannot show that the reasons for the adverse employment decisions were a pretext for discrimination in violation of the ADA. Although the latter presents a much closer question, the Court is unpersuaded by either argument.

### A. Disability

Because Monce's cancer was in remission at the time of her suspension, Defendants argue that she was not disabled for purposes of the ADA. In response, Monce asserts that the fact her cancer was in remission "is actually of no moment at all" because the definition of disability under the ADA is to be construed in favor of broad coverage. (Doc. No. 45 at 12). This is confirmed by the 2008 Amendments to the ADA ("the ADAAA"), which identify certain impairments that "will, in virtually all cases, result in a determination of coverage," 29 CFR § 1630.2(j)(3)(ii), including cancer because it "substantially limits cell growth," 29 CFR § 1630.2(j)(3)(iii). Monce goes on to argue that, since the adoption of the 2008 Amendments, "courts faced with the question have routinely concluded that a showing that the plaintiff suffers from cancer, even in remission, is sufficient to satisfy the plaintiff's burden of proving that she is disabled under the Act." (Id.).

Monce's argument is a bit of an overstatement. As the Third Circuit recently observed:

> [C]ancer can—and generally will—be a qualifying disability under the ADA. Nevertheless, "[t]he determination of whether an impairment substantially limits a major life activity requires an individualized assessment." 29 C.F.R. § 1630.2(j)(1)(iv). Although the ADAAA makes the individualized assessment "particularly simple and straightforward" for diseases like cancer, 29 C.F.R. § 1630.2(j)(3)(ii), an individualized assessment must still take place. To undertake that individualized assessment, courts have required some evidence of the plaintiff's substantial limitation—even when the limitation seems self-evident in context.

Alston v. Park Pleasant, Inc., 679 F. App'x 169, 172 (3d Cir. 2017)

Monce has provided more than "some evidence" of a substantial limitation, particularly where a plaintiff need only show a limitation "to perform a major life activity as compared to most people in the general population.'" Barlia v. MWI Veterinary Supply, Inc., No. 17-1185, 2018 WL 327448, at *5 (6th Cir. Jan. 9, 2018) (quoting 29 C.F.R. § 1630.2(j)(1)(ii)). "'[U]sually [this comparison] will not require scientific, medical, or statistical analysis.'" Id. (quoting 29 C.F.R. §

1630.2(j)(1)(v) (2017)). "In addition, the non-ameliorative effects of mitigating measures, such as negative side effects of medication or burdens associated with following a particular treatment regimen, may be considered when determining whether an individual's impairment substantially limits a major life activity." 29 C.F.R. § 1630.2(j)(4)(ii).

In her Declaration, Monce states that, as a result of her surgeries and subsequent radiation treatments relating to cancer, she developed osteopenia and residual pain in her hip and sciatic nerve. She was prescribed Tamoxifen, a breast cancer medication, that caused her to develop scoliosis and a Vitamin D deficiency that, in turn required supplements which lead to extreme fatigue. More generally, Monce contends that the medication that she has taken in relation to her cancer treatment has limited her ability to work, socialize, perform manual tasks, lift, bend, and concentrate. (Doc. No. 47-8). These are all limitations on a major life activity under the ADA, 42 U.S.C. § 12102(2)(a), suggesting Monce is "disabled" for purposes of the ADA.

"The primary object in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether the individual meets the definition of disability." 29 C.F.R. § 1630.1(c)(4). Therefore, the Court turns to the critical issue of whether a reasonable jury could conclude that Monce was discriminated against on the basis of her disability.

### B. Legitimate Non-Discriminatory Reason and Pretext

Defendants insist that Monce's disability had nothing to do with her suspension. They argue that Monce was suspended without pay "due to violations of Board policies":

> It is a violation of Marshall County Board of Education Policy 1.804, to use alcohol in the workplace. On February 4, 2015, Plaintiff gave a student an x-acto knife to cut into her scalp and check for infection of a recent head injury; the student used the knife to make an incision into Plaintiff's scalp. On February 10, 2015, Plaintiff

received a Formal Letter of Reprimand for her actions on February 4, 2015, and on February 12, 2015, Plaintiff received a three-day suspension for her actions on February 4, 2015. On February 24, 2015, a meeting between Plaintiff and Administrators Robby Reasonover and Davy McClaran took place to discuss expectations and consequences for Plaintiff, as well as the requirement of her position; this meeting resulted in a Corrective Plan for Plaintiff to follow. On April 21, 2015, Plaintiff left her class unsupervised, and during this time, a student videoed another student climbing on the basketball goals ten feet off the ground. The next day, April 22, 2015, Jackie Abernathy smelled alcohol on the Plaintiff while at work during a meeting to discuss her actions the previous day. The use of alcohol in the workplace is a violation of Board Policy 1.804, thus, Ms. Abernathy suggested the Plaintiff submit to a drug test or be suspended without pay to due violation of this policy. The Plaintiff submitted to a drug test, which was positive for alcohol metabolites. Thus, Plaintiff was suspended due to a violation of board policies, and she was not allowed to return to the 2016-17 school year without a 10-panel clean drug screen.

(Doc. No. 39 at 14-15) (internal citation to record omitted).

Clearly, an employee's failure to comply with an established, non-discriminatory employment policy regarding the use of alcohol in a school environment constitutes a legitimate reason for an adverse employment action. Russell v. Lew, 549 F. App'x 389, 394 (6th Cir. 2013); Blackshear v. Interstate Brands Corp., 495 F. App'x 613, 618 (6th Cir.2012). Thus, it falls on Monce to show that the stated reason proffered by Defendants for her suspension was in fact a pretext designed to hide discrimination.

An employee may establish pretext by showing that "(1) the employer's stated reason for [the adverse employment action] has no basis in fact, (2) the reason offered for [the adverse employment action] was not the actual reason . . . , or (3) the reason offered was insufficient to explain the employer's action." Imwalle v. Reliance Med. Prod., Inc., 515 F.3d 531, 545 (6th Cir. 2008) (citing Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1084 (6th Cir.1994)).[5] The evidence

---

[5] "Regardless of which rebuttal method is employed, the plaintiff retains the ultimate burden of producing 'sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendants intentionally discriminated against him.'" Id. (quoting Johnson, 319 F.3d at 866.

Monce has presented implicates the first two ways of showing pretext.

Leaving a class unattended for a certain period of time is likely a suspendible offense, and a teacher allowing a student to cut her with an X-acto knife, while probably unprecedented, most certainly should be as well. Yet twice in the paragraph quoted above, Defendants identify the only policy violated to be that of use of alcohol in the workplace. Perhaps the X-acto knife incident and being absent from the classroom when a student climbed the backboard were alcohol related, but there is no evidence of that before the court.

Instead, Defendants rely on Abernathy's assertion that Monce smelled of alcohol during the April 22, 2015 meeting, and that the "Forrest School administration" became aware of her being "highly-medicated" at a ballgame more than a year earlier. However, Monce denies that she drank alcohol on the day of the meeting and claims this was "a story Director Abernathy did not tell until more than a year later." (Doc. No. 45 at 13). She claims that Jacob Sorrells, who was then-Assistant Director of Schools and attended the April 22, 2015, is "a habitual taker of daily notes regarding all matters of significance, yet his note from that meeting mentions nothing about alcohol." (Doc. No. 45 at 15 n. 13). If Monce's assertions are true, this raises the specter that Aberntathy's stated reason for the suspension had no basis in fact.

To the extent that Monce appeared to be "highly medicated" at the ballgame and Abernathy relied upon it for the suspension, this raises the specter that the stated reason for the suspension (*i.e.* use of alcohol in the workplace) was not the true reason for the dismissal. After allegedly smelling alcohol, Abernathy did not simply order a blood alcohol test: she required Monce to undergo a ten-panel drug test that showed the existence not only of alcohol, but also prescription medication. A reasonable jury could conclude that improper alcohol use does not explain the need for a full panel

drug test, nor does it explain why Abernathy insisted on (1) another ten-panel drug test in August 2015; (2) a letter from Monce's physician attesting that she was capable of performing her job; and (3) production of Monce's medicine bottles. Instead, a jury could conclude that what does explain those requests is that Abernathy viewed Monce as being disabled and as substantially impaired in her work because she took medication as a part of her treatment for cancer.

Lest there be any misunderstanding, the Court emphasizes that the question of the legitimacy of Defendants' proffered explanation and pretext presents a very close call. On the one hand, Monce exhibited behavior that, at least on one occasion, bordered on the bizarre. "Employers need to be able to use reasonable means to ascertain the cause of troubling behavior without exposing themselves to ADA claims[.]" Sullivan, 197 F.3d at 811 (quoting Cody v. CIGNA Healthcare, 139 F.3d 595, 599 (8th Cir.1998)). On the other hand, "evidence that an employer's asserted legitimate reasons for firing a plaintiff were concocted after-the-fact can be evidence of pretext." Jones-McNamara v. Holzer Health Sys., 630 F. App'x 394, 410 (6th Cir. 2015); see also Gaglioti v. Levin Grp., Inc., 508 F. App'x 476, 482 (6th Cir. 2012) (citation omitted) ("We are disquieted . . . by an employer who 'fully' articulates its reasons for the first time months after the decision was made."); Wheet v. Greenwood Ford, Inc., 124 F.3d 201 (6th Cir. 1997) (finding jury question presented where "defendant did not rely on this explanation at the time plaintiff was fired," but instead provided a "post-hoc" rationale).

Accordingly, summary judgment will be denied on Monce's ADA claim against the Marshall County Board of Education.[6]

---

[6] Because "[i]ndividual supervisors who do not independently qualify under the statutory definition of employers may not be held personally liable in ADA cases," Sullivan v. River Valley Sch. Dist., 197 F.3d 804, 808 n.1 (6th Cir. 1999), Defendants also move for summary judgment on

**B. Fourth Amendment Claims – Unreasonable Search**

Defendants concede that questions of fact exist related to Monce's Fourth Amendment drug testing claim. They do, however, argue that Abernathy is entitled to qualified immunity on Monce's claim that inspection of her medication bottles violated the Fourth Amendment.

The qualified immunity inquiry involves determining (1) whether a constitutional violation occurred and (2) whether the right infringed was clearly established. McKinley v. City of Mansfield, 404 F.3d 418, 429–30 (6th Cir. 2005). A court is to use its "sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236 (2009).

Here, Defendants' assume for the sake of argument that the right to be free from an unreasonable inspection was clearly established. Their sole argument is that, "[e]ven if this action is considered to be a search, the Plaintiff herself voluntarily took her medications to Principal McClaran and demanded that they be shared with Ms. Abernathy." (Doc. No. 39). They note that "warrantless searches are permissible if consent is freely and voluntarily given," and that "[i]t is possible to give consent by conduct." (Id.).

The problem with Defendants' argument is two-fold. First, there is a hotly-disputed issue of fact as to whether Abernathy demanded that the medications be brought in, or whether Monce voluntarily brought them to the school for inspection. Second, Defendants have not presented proof "by clear and positive testimony" that consent was "free[ly] and voluntar[ily]" given, "uncontaminated by any duress or coercion." United States v. Moon, 513 F.3d 527, 537 (6th Cir.

---

Monce's ADA claim against Abernathy. Monce agrees and, accordingly, summary judgment will be granted in favor of Abernathy on the ADA claim against her.

2008) (citation omitted); see also, Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973) ("[W]hether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances."). Accordingly, summary judgment will not be granted in favor of either Defendant on Monce's Fourth Amendment claims.

## C. Fourteenth Amendment Claim – Due Process

Monce asserts that she was deprived of her property right in continued employment without due process of law. In response, Defendants argue that (1) Monce's due process claim is barred because it is inadequately pled; (2) Monce was provided all of the process to which she was due; and (3) Abernathy is entitled to qualified immunity on this claim.

### 1. *Failure to Plead Inadequacy of State Remedies*

Relying on Jefferson v. Jefferson Cty. Public School Systems., 360 F.3d 583 (6th Cir. 2004), Defendants argue that Monce's "fail[ure] to allege that the remedies provided by the Tennessee Tenured Teacher Act were inadequate precludes her due process claim." (Doc. No. 39 at 18). The Court disagrees.

In Jefferson, the Sixth Circuit held that a teacher who was afforded a pre-termination hearing, suspended, and allegedly forced to retire could not seek relief under 42 U.S.C. § 1983 for the deprivation of due process "without first pleading and proving the inadequacy of state or administrative processes and remedies to redress her due process rights" Id. at 488. Critically, the plaintiff in Jefferson conceded that "the predeprivation hearing she received was adequate," id., something Monce denies here. Furthermore, a subsequent decision from the Sixth Circuit has recognized that, while Jefferson represents one line of authority, "the correct line of authority in the

Sixth Circuit" is that a plaintiff need not allege inadequate state remedies unless, as in <u>Parratt v. Taylor</u>, 451 U.S. 527 (1981),[7] the deprivation arose from a random or unauthorized act. <u>Mitchell v. Fankhauser</u>, 375 F.3d 477, 483 (6th Cir. 2004); <u>see also</u> <u>Rodgers v. 36th Dist. Court</u>, 529 F. App'x 642, 649 (6th Cir. 2013) (endorsing <u>Mitchell</u>'s approach).

Regardless, Monce claims that she invoked her rights under the TTA by requesting a hearing through her lawyer, but this was ignored by Abernathy. The requirements of <u>Parratt</u> do not apply where "Defendants had the opportunity to provide pre-deprivation process pursuant to an established procedure[.]" <u>Lane v. City of Pickerington</u>, 588 F. App'x 456, 465 (6th Cir. 2014); <u>see</u> <u>Ctr. for Powell Crossing, LLC v. City of Powell</u>, 173 F. Supp. 3d 639, 663 (S.D. Ohio 2016) (relying on <u>Lane</u> for the proposition that <u>Parratt</u> does not apply where "the state had in place predeprivation process").

## 2. *Sufficiency of Process Provided*

The Due Process Clause of the Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "'In order to establish a procedural due process claim, a plaintiff must show that (1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest.'" <u>Albrecht v. Treon</u>, 617 F.3d 890, 894 (6th Cir. 2010) (quoting <u>Women's Med.</u>

---

[7] In <u>Parratt</u>, an inmate claimed that prison administrators deprived him of due process after losing his mail. The Supreme Court held that, where the alleged due process violation is the result of a "random and unauthorized act" of a state employee, an adequate state post-deprivation remedy is all the process that is due. <u>Id.</u> at 541. In fact, pre-deprivation due process was not at issue in that case because the property loss was due to negligence, "did not occur as a result of some established state procedure," "the State [could not] predict precisely when the loss [would] occur," and "in most cases, it is not only impracticable, but impossible, to provide a meaningful hearing before deprivation." <u>Id.</u>

Prof'l Corp. v. Baird, 438 F.3d 595, 611 (6th Cir. 2006)). "Property interests are not created by the Constitution," but, instead, 'are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law[.]" Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985); (quoting Bd. of Regents v. Roth, 408 U.S., at 564 577 (1972)).

In Tennessee, "[a] tenured teacher, like other public employees, possesses a constitutionally protected property interest in continued employment, and she cannot be deprived of this right without due process." Thompson v. Memphis City Sch. Bd. of Educ., 395 S.W.3d 616, 627 (Tenn. 2012). "Two of the essential requirements of due process are pre-deprivation notice and an opportunity to be heard." Id. With regard to the distinction between pre-deprivation and post-deprivation process, the Sixth Circuit has observed:

> "[I]n the pretermination stage, the employee does not have a right to, and the Constitution does not require, a neutral and impartial decisionmaker. The "right of reply" before the official responsible for the discharge is sufficient. It is at the post-deprivation stage where a neutral decisionmaker is needed to adjudicate the evidence. Where there is a system of post-termination procedures available to the employee that includes a neutral decisionmaker and/or arbitration, coupled with a pretermination "right of reply" hearing, then the employee has received all the process due under the Constitution.

Farhat v. Jopke, 370 F.3d 580, 595–96 (6th Cir. 2004) (citing Duchesne v. Williams, 849 F.2d 1004, 1006 (6th Cir. 1988)).

Defendants contend Monce was provided due process based upon the following:

Monce received written notification of the charges against her for leaving her students unattended and failing to follow her corrective action plan. She had a meeting with Robby Reasonver, Jacob Sorrells, and Director of Schools Jackie Abernathy. Abernathy suggested Monce take a drug test, and Monce received an opportunity to discuss it with her MCA rep. When the results came back, Defendant sent Ms. Monce a notification on April 30, 2015 of the charges against her. On her behalf, an attorney requested either: 1) a more detailed explanation of the charges;

or 2) a hearing. Clearly, she received an explanation of the charges and the opportunity to resolve them; she took the requested second drug and, as her attorney's follow up letter indicated, she believed all would be forgiven.

(Doc. No. 39 at 19). However, just as with Monce's ADA claim and the question of the legitimacy of Defendants' proffered reason for suspension, questions of fact preclude summary judgment on Monce's due process claim.

"'The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.'" Mitchell, 375 F.3d at 480 (quoting Loudermill, 470 U.S. at 546). The "explanation the charges" Defendants reference was simply that Monce was "suspended without pay form the Marshall County School System for the remainder of the school year due to violation of school board policies." (Pf. Exh. 15). While the Court has no way of knowing what exactly occurred at the meeting on April 22, 2015, if the issue of alcohol misuse was not raised, then Monce would not have had an opportunity to present her "side of the story," nor was she provided an opportunity to explain at a post-deprivation hearing because Abernathy never responded to the TEA lawyer's request for a hearing.[8]

### 3. *Individual Liability*

At a minimum, Defendants assert that Abernathy is entitled to qualified immunity. According to Defendant, "a reasonable person facing the circumstance that Abernathy faced would not have believed that her conduct violate Monce's constitutional rights." (Doc. No. 39 at 20-21).

---

[8] The Court acknowledges Defendants' reliance on TEA counsel's letter of August 21, 2015 stating that if Monce underwent a second drug test, then "all is forgiven," and Defendants' claim that Monce waived a hearing. However, Monce denies that this letter resolved the dispute between the parties. Moreover, that letter was sent months after Monce was suspended without pay. See Tenn. Code Ann. § 49-5-512(a)(2) (stating that, within five days of a written request, the director of school shall name an impartial hearing officer).

After all, "Monce clearly exhibited a change in behavior that would have provided a reasonable person with suspicion for substance abuse." (Id. at 21). This may be so, but Defendants' argument misses the mark entirely. The question here is not whether Monce should have been suspended. Rather the question is whether she was afforded due process once that decision had been made.

When the defense of qualified immunity is raised, "plaintiff has the burden of showing that a right is clearly established." Everson v. Leis, 556 F.3d 484, 494 (6th Cir. 2009). "'For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Holzemer v. City of Memphis, 621 F.3d 512, 527 (6th Cir. 2010) (quoting, Leonard v. Robinson, 477 F.3d 347, 355 (6th Cir. 2007)). "'A right is clearly established if there is binding precedent from the Supreme Court, the Sixth Circuit, the district court itself, or other circuits that is directly on point.'" Id. (quoting Risbridger v. Connelly, 275 F.3d 565, 569 (6th Cir. 2002)).

Leaving aside that the TTA has been in existence since 1952, Loudermill, decided by the United States Supreme Court in 1985, made clear that an individual with a right to continued employment under state law cannot be denied that property right without due process of law. 470 U.S. at 538-39; see also, Rodgers, 529 F. App'x at 650 ("Supreme Court and Sixth Circuit precedent clearly establishes that public employees who may be fired only for 'just cause' have property interests in their continued employment protected by due process."); Epps v. Watson, 492 F.3d 1240, 1247 (11th Cir. 2007) (citing Loudermill for the proposition that "it is clearly established that an employee with a protected property interest in continued employment may not be terminated without due process of law"). Accordingly, summary judgment will not be granted in favor of Abernathy on the due process claim.

**D. TTA Claim**

Finally, Defendants request dismissal of Monce's TTA claim on three grounds. First, relying on  Sullivan v. Brown, 544 F.2d 279, 284 (6th Cir. 1976), and language from the Act, Defendants argue that the Court lacks jurisdiction over the claim.   However, the Sixth Circuit's concern in Sullivan was with whether a federal court is the "appropriate forum in which to review the multitude of personnel decision that are made on a daily basis," and plaintiff's attempt "to make a federal case out of" the fact that she was transferred to another school. (Id.). The court did not discuss supplemental jurisdiction, which provides district courts with jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). TTA claims are routinely decided by federal courts in conjunction with other claims. See, Barbee v. Union City Bd. of Educ., 559 F. App'x 450, 451 (6th Cir. 2014) (affirming grant of summary judgment in favor of board on teacher's claims that he was wrongfully terminated under the TTA and denied his right to due process); Dunn v. Spivey, 480 F. App'x 410, 413 (6th Cir. 2012)(construing the TTA in the context of a Section 1983 case); Worthams v. Bd. of Educ. of Memphis City Sch., 936 F.2d 574 (6th Cir. 1991) (finding that plaintiff was not deprived of property under Fourteenth Amendment and that the school board properly followed TTA).

As for the Act's language, Defendants rely on the provision in the statute that "[a] tenured teacher who is dismissed or suspended by action of the board pursuant to §49-5-512(c)(3), or suspended by action of the director pursuant to § 49-5-412(d)(3), may petition for writ of certiorari from the chancery court of the county where the teacher is employed." Tenn. Code Ann. § 49–5–511(a). However, there was no"action of the board" after Abernathy allegedly ignored the

TEA lawyer's letter requesting a hearing, and, according to Monce, no "action of the director" that complied with Section 512(d)(4). See Thompson v. Memphis City Sch. Bd. of Educ., 395 S.W.3d 616, 623 (Tenn. 2012) (emphasizing that "[n]o teacher shall be dismissed or suspended except as provided in" the TTA).

For much the same reason, Defendants' second argument fails. They assert that Monce waived her TTA claim by failing to avail herself of its available remedies. For those rights to attach, however, a teacher need only request a hearing, and it then fall upon the director of schools to get the ball rolling by naming an impartial hearing officer. Tenn. Code Ann. 49-6-512(a)(1), (2). The hearing provision aside, Monce claims Abernathy had no authority under the TTA to suspend her for more than three days, which is itself a violation of the TTA.

Third, Defendants' argue that the TTA claim against Abernathy must be dismissed because the statute provides that "[t]he director or schools or other school official shall not be held liable, personally or officially, when performing their duties in prosecuting charges against any teacher or teachers under this part." Tenn. Code Ann. § 49-5-512(b). While Monce contends this provision is inapplicable because "Abernathy was acting completely outside the bounds of her authority in imposing a long-term disciplinary suspension," (Doc. No. 45 at 27), the fact remains that, through this claim, Monce is seeking to hold Abernathy liable under the TTA, something the Act expressly prohibits. Accordingly, summary judgment will be granted solely as to Monce's TTA claim against Abernathy.

## IV. Conclusion

For the foregoing reasons, Defendants' "Motion for Partial Summary Judgment as to Marshall County Board of Education and Summary Judgment as to Jackie Abernathy" (Doc. No.

38) will be granted solely with respect to the individual capacity claims against Abernathy under the

ADA and the TTA.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE